# EXHIBIT A

Case Number: NM-2024-0217
Filed in Newport County Superior Court
Submitted: 5/28/2024 2:26 PM
Envelope: 4645612
Reviewer: Vaughn H.

**STATE OF RHODE ISLAND** **SUPERIOR COURT**
**NEWPORT, SC**

| | | |
|---|---|---|
| **NEW ENGLAND PROPERTY SERVICES GROUP, LLC, a Massachusetts Limited Liability Company** | : | |
| **Plaintiff** | : | |
| **v.** | : | **C.A. No.:** |
| **NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY, an Ohio Corporation** | : | |
| **Defendant** | : | |

**MISCELLANEOUS PETITION FOR APPOINTMENT OF AN UMPIRE PURSUANT TO THE APPRAISAL CLAUSE OF THE NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY POLICY**

**INTRODUCTION**

New England Property Services Group, LLC ("NEPSG") and Nationwide Property and Casualty Insurance Company ("NATIONWIDE") are in a dispute over an insurance claim involving direct physical loss to a residence in Rhode Island caused by a storm-related event. The dispute concerns the appraisal of an insurance claim, wherein ownership of the claim has been transferred to NEPSG via the claim assignment clause in a home restoration contract. "[W]hen Policyholders assigned their interests in the Claim to Plaintiff, Plaintiff became the "equitable owner" of the Claim and therefore, had the same rights under the Policy to pursue recovery for the Claim as the Policyholders did prior to assignment." *New Eng. Prop. Servs. Grp. v. USAA Cas. Ins. Co.*, C. A. PC-2023-00130, at *10 (R.I. Super. July 28, 2023). As NATIONWIDE and NEPSG disagreed regarding the amount of loss involved in the claim,

NEPSG invoked the policy's appraisal dispute resolution process to determine the amount of loss, with NEPSG naming an appraiser and NATIONWIDE refusing to name an appraiser. The dispute resolution process outlined in the appraisal clause of the relevant insurance policy is mandated by R.I. Gen. Laws §§ 27-5-2 and 27-5-3. The policy's mandated timeframe for the respective appraisers to agree on an appraisal umpire, tasked with resolving their disagreements, has expired. Pursuant to the authority granted to this Honorable Court by both the appraisal clause of the pertinent insurance policy and R.I. Gen. Laws § 27-5-3, NEPSG hereby requests the appointment of Hon. Francis X. Flaherty (ret.), as the appraisal umpire.

## PARTIES

1. The Petitioner, New England Property Services Group, LLC ("NEPSG" or "Petitioner"), is a Massachusetts Limited Liability Company that is properly registered to do business in the state of Rhode Island.
2. The Defendant, Nationwide Property and Casualty Insurance Company ("NATIONWIDE") is an Ohio corporation with its home office located at One Nationwide Plaza, Columbus Ohio, and is properly licensed to do business in the State of Rhode Island.

## JURISDICTION

3. This Court has jurisdiction to appoint an appraisal umpire pursuant to the terms of the relevant insurance policy involved in this matter, which, in pertinent part, reads:

> 2. Appraisal. If we and you **disagree on the amount of loss, either may make written demand for an appraisal of the loss.** In this event, **each party will select a competent and impartial appraiser** after receiving a written request from the other and will **advise the other party of the name of such appraiser within 20 days. The two appraisers will select an umpire. If appraisers cannot agree, either may request that selection be made by a judge of a court having jurisdiction.**

4. This Court has jurisdiction to appoint an appraisal umpire pursuant to the appraisal provision contained in R.I. Gen. Laws § 27-5-3 that, in relevant part, states:

> The appraisers shall first select a competent and disinterested umpire; **and failing for fifteen (15) days to agree upon the umpire**, then, **on request of the insured or this company, the umpire shall be selected by a judge of a court of record in the state in which the property covered is located...** (Emphasis added).

5. The Rhode Island Supreme Court, in *Hahn v. Allstate Insurance Company* held that the entire thrust of R.I. Gen. Law §27-5-3 "is to ensure speedy and efficient resolution of claims." *Hahn v. Allstate Insurance Company*, 15 A.3d 1026, 1030 (R.I. 2011). (A copy of *Hahn v Allstate Insurance Company* is attached hereto as Exhibit 1).

## GENERAL ALLEGATIONS

6. NATIONWIDE issued businessowners policy number ACP BPHK 5414398126 ("Policy") to Prospect Condominiums, Inc. a/k/a Prospect Hill Condominium Association ("Policyholder"), who paid the premium for the Policy.
7. The Policy insures the Policyholder's interest in the premises located at 101-103 Prospect Hill Avenue, West Warwick, Rhode Island ("Subject Premises").
8. At all times relevant hereto, the Policy was actively insuring the Subject Premises.
9. On or about September 1, 2021, the Subject Premises sustained direct physical loss due to storm related events.
10. On or about September 27, 2021, owner and sole member of NEPSG Steven Ceceri ("Mr. Ceceri") conducted an inspection of the Subject Premises for storm related damage.
11. On or about October 5, 2021, the Policyholder filed an insurance claim with NATIONWIDE under the Policy for the damage to the Subject Premises.
12. Defendant NATIONWIDE accepted said claim and assigned it claim number 478117-GM ("Claim") with a date of loss of September 1, 2021.

13. On or about October 7, 2021, the Policyholder executed a Home Restoration Contract, containing a written irrevocable assignment of insurance claim benefits and rights clause ("Contract"), with NEPSG whereby the Policyholder assigned all of its rights and benefits regarding the post-loss Claim to NEPSG and in return, NEPSG agreed to perform the necessary repairs to restore the Subject Premises.

14. Additionally, on or about October 7, 2021, the Policyholder provided NEPSG with a Consent of the Association of the Unit Owners, whereby all condominium unit owners consented to Unit Owner Donna Sit acting as the Policyholder's representative.

15. On or about October 8, 2021, NATIONWIDE completed an estimate for damage to the Subject Premises ("NATIONWIDE Estimate"), detailing a Replacement Cost Value ("RCV") of $9,862.22, less depreciation for an Actual Cash Value ("ACV") of $9,452.19, further deducting the Policy's deductible for a net claim total of $8,452.19.

16. On or about October 8, 2021, NATIONWIDE sent the Policyholder a Claim payment letter, including the NATIONWIDE Estimate.

17. On or about October 8, 2021, NATIONWIDE also sent Policyholder a check in the amount of $8,862.22, amounting to the NATIONWIDE Estimate RCV, less the deductible.

18. On or about October 19, 2021, NEPSG emailed a copy of the Contract to NATIONWIDE with a request to negotiate and settle the Claim.

19. In the October 19, 2021 email, NEPSG further requested a copy of the NATIONWIDE Estimate, which had not been provided to the Policyholder with the Claim payment letter and check for Claim proceeds.

20. In the October 19, 2021 email, NEPSG also requested a certified copy of the Policy, which NATIONWIDE did not provide until on or about January 10, 2022.

21. On or about December 28, 2021, NEPSG In-House counsel, Attorney Tom Alves ("Attorney Alves") emailed NATIONWIDE, noting that NEPSG intended to demand appraisal but required a copy of the Policy first so that NEPSG could follow the procedure outlined in the Policy.

22. On or about December 29, 2021, NATIONWIDE responded to Attorney Alves, attaching a copy of the NATIONWIDE Estimate and stating that a certified copy of the policy would be emailed to NEPSG.

23. On or about February 20, 2022, NEPSG completed an estimate and scope of loss ("NEPSG Estimate") for damage to the Subject Premises, which was provided to NATIONWIDE on or about February 21, 2022.

24. The NEPSG Estimate detailed a RCV of $119,067.28, less the deductible for a net claim amount of $118,067.28.

25. On or about February 22, 2022, NATIONWIDE claims adjuster Tom Huntsinger ("Mr. Huntsinger") send an email to NEPSG, asserting that after reviewing the NEPSG Estimate, NATIONWIDE would need to conduct a reinspection with an engineer or NEPSG and NATIONWIDE could go straight to appraisal, depending on NEPSG's preferred course of action.

26. Thereafter, NEPSG disagreed with NATIONWIDE's estimated amount of loss for the Claim, so on or about March 3, 2022, NEPSG sent a written demand for appraisal to NATIONWIDE ("Demand"), naming Christopher Ceceri of CMC Contracting Services as its appraiser pursuant to the Policy and Rhode Island Law.

27. Christopher Ceceri was unable to serve as appraiser, so NEPSG subsequently named Jose Medeiros of Medeiros and Daughters ("Mr. Medeiros") as its appraiser.

28. On or about March 14, 2022, NATIONWIDE sent correspondence to NEPSG, asserting that NATIONWIDE would consent to the appraisal process, but only after reinspection of the Subject Premises, contrary to the appraisal procedure outlined in the Policy.
29. On or about March 25, 2022, after NATIONWIDE failed and/ or refused to abide by the appraisal provisions in the Policy, NEPSG filed a Miscellaneous Petition for Appointment of an Umpire Pursuant to the Appraisal Clause of the Nationwide Property and Casualty Insurance Company Policy ("Petition").
30. At hearing on or about April 22, 2022, this Honorable Court ordered that NATIONWIDE was required to name an appraiser pursuant to the Policy within twenty (20) days.
31. On or about April 27, 2022, NATIONWIDE filed a Motion to Compel Inspection of the Premises Prior to Initiating the Appraisal Process ("Motion to Compel Inspection"), seeking a second inspection of the Subject Premises before NATIONWIDE would submit to appraisal.
32. On or about May 9, 2022, a hearing was held on NATIONWIDE's Motion to Compel Inspection, wherein Hon. Bruan Van Couyghen of Kent County Superior Court allowed NATIONWIDE's motion and ordered that a second inspection of the Subject Premises be conducted within fifteen (15) days.
33. On or about May 12, 2022, NATIONWIDE contacted NEPSG, naming Louis Certuse, of Certuse Adjustments ("Mr. Certuse") as NATIONWIDE's appraiser.
34. On or about June 15, 2022, after hearing on May 9, 2022 and June 10, 2022, the Hon. Brian Van Couyghen entered an order appointing Hon. Mark Pfeiffer, Esq. ("Umpire Pfeiffer") as appraisal umpire.
35. On or about November 29, 2022, Umpire Pfeiffer completed and signed an Appraisal Award

with NATIONWIDE appraiser Mr. Certuse with a RCV of $28,502.53 and an ACV of $25,644.00.

36. NEPSG's appraiser failed to agree with the amount of loss detailed in the Appraisal Award and did not sign the Appraisal Award.

37. Thereafter, NEPSG began work to repair and restore the Subject Premises to its pre-loss condition.

38. The Appraisal Award's valuation of the amount of loss failed to factor in the proper building materials needed to restore the damages under the Policy and pursuant to R.I. Building Code, OSHA Compliance regulations, and all material Manufacturer's installation instructions.

39. As such, NEPSG continued to disagree with the valuation of the Claim's amount of loss, so on or about March 28, 2024, NEPSG submitted a second Demand for Appraisal ("Second Demand") pursuant to the Policy, naming Joey Medeiros as NEPSG's appraiser.

40. NATIONWIDE then had twenty (20) days to name an appraiser pursuant to the Policy, by April 17, 2024.

41. On or about April 1, 2024, NATIONWIDE replied to the Second Demand, acknowledging the receipt of same.

42. On or about April 5, 2024, NATIONWIDE sent NEPSG a letter, denying the Second Demand and asserting that the statute of limitations had passed for NEPSG to demand appraisal.

43. In support of its argument, NATIONWIDE cites the Policy's Property Loss Conditions, which requires "any action on this policy for the recovery of any claim for direct loss of ***damage by fire or lightning*** must be brought within ***two years*** after the date on which such direct loss or damage occurred. (Emphasis Added).

44. Upon information and belief, NATIONWIDE misstates Policy language regarding the present storm damage claim in an effort to delay the appraisal process in bad faith and avoid remitting payment on the Claim.
45. As of the date of this filing, NATIONWIDE has refused to name an appraiser, pursuant to the Policy and Rhode Island law.
46. Consequently, an umpire candidate wasn't named within fifteen (15) days, as NATIONWIDE has refused to name an appraiser.
47. As of the date of this filing, sixty-one (61) days have passed since NEPSG submitted the Second Demand, and NATIONWIDE has failed or refused to name an appraiser.
48. This Honorable Court has the authority to appoint an appraisal umpire pursuant to the appraisal provision of the Policy and R.I. Gen. Laws § 27-5-3, as the prerequisites for jurisdiction have been fulfilled and the timeframe mandated by the Policy for the appraisers to agree upon an umpire candidate has passed.

**REQUEST FOR RELIEF**

WHEREFORE, to ensure a speedy and efficient resolution of the Claim through the appraisal process provided in the Policy, which unambiguously requires a determination of the amount of loss, the Petitioner respectfully requests this Honorable Court to appoint Honorable Francis X. Flaherty, a retired Rhode Island Supreme Court Justice and a Rhode Island resident as the appraisal umpire to allow the process to proceed forward without forcing the Petitioner into a more "costly and time-consuming litigation." See *Hahn,* 15 A.3d. 1026, 1030 (R.I. 2011). (A copy of Hon. Francis X. Flaherty's credentials are attached hereto as Exhibit 2).

Respectfully Submitted,
NEW ENGLAND PROPERTY SERVICES GROUP, LLC
By its attorney,

/s/Makenzie A. Scott
Makenzie A. Scott #10535
In-House Legal Counsel
New England Property Services Group, LLC
1822 North Main Street
Second Floor Annex, Suite #001
Fall River, MA 02720
(401) 320-0755
Makenzie@newenglandpropertyservicesgroup.com

# Exhibit 1

**15 A.3d 1026**

**Ashley HAHN**
**v.**
**ALLSTATE INSURANCE COMPANY.**

**No. 2009–164–Appeal.**

**Supreme Court of Rhode Island.**

**March 31, 2011.**

[15 A.3d 1027]

Robert J. Quigley, Jr., Providence, Esq., for Defendant.Neil P. Philbin, Peace Dale, Esq., for Plaintiff.**Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.**

**OPINION**
**Justice GOLDBERG, for the Court.**

This case is before the Supreme Court on appeal by Allstate Insurance Company (Allstate or defendant) from the grant of a permanent injunction against Allstate in the Providence County Superior Court. The plaintiff, Ashley Hahn (Hahn or plaintiff), sought injunctive relief against the defendant based on its refusal to submit to an appraisal of damages caused by fire at the plaintiff's house. On appeal, Allstate argues: (1) that the trial justice failed to make adequate findings of fact to support a final judgment as required by Rule 54(b) of the Superior Court Rules of Civil Procedure; (2) that, although labeled "a permanent injunction," the relief was actually preliminary and mandatory in nature and as such, the trial justice failed to find the requisite "great urgency" to justify this form of relief; and (3) that the trial justice's declaration that the parties were bound to submit the dispute to appraisal was inconsistent with the facts of the case and the applicable case law. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**Facts and Travel**

On May 29, 2008, plaintiff's home was damaged by an accidental fire. It is undisputed that her "Deluxe Homeowner's Policy," issued by Allstate, was in effect at the time of the fire and was designed to indemnify plaintiff for loss caused by fire damage. However, a dispute arose when plaintiff and defendant's respective adjusters prepared damage estimates that varied substantially from each other. The plaintiff's insurance policy contained a provision, as required by G.L.1956 § 27–5–3, affording either party the right to have disputes over the amount of loss resolved through an appraisal process. Despite that provision, defendant refused to submit to an appraisal; defendant contended that the dispute arose because plaintiff's adjuster accounted for damages that were not the result of the fire, giving rise, Allstate feared, to an assessment of loss not attributable to the insured event. As such, defendant contended that the dispute was focusing on the scope of coverage under the deluxe policy and not on the extent of the damages caused by the fire. According to Allstate, the correct vehicle for resolution of this controversy was litigation, not the appraisal process set forth in the policy and mandated by law.

The plaintiff brought suit in Superior Court seeking declaratory and injunctive

[15 A.3d 1028]

relief, including an order for an appraisal in accordance with the policy, as well as compensatory and punitive damages for defendant's breach of contract. The defendant timely answered, asserting that the issue was the scope of coverage under the policy and not the appraisal clause. Additionally, Allstate filed a counterclaim seeking a declaratory judgment that the appraisal clause was limited "to disputes involving the cost of damages sustained, and that issues involving the existence, scope or extent of damages are not subject to the appraisal process."

The case was heard before a justice of the Superior Court on January 30, 2009. In a bench decision, the trial justice granted plaintiff's

motion and ordered defendant to submit to an appraisal. The court noted that "nowhere in its pleading, nor in any argument made to the [c]ourt in response to plaintiff's application, does the defendant point to any reason to believe that any such nonfire-caused damage exists to any part, portion, or element of the insured premises." The trial justice declared that in assessing loss, "the appraisers may determine for themselves whether or not any part of such loss was the result of some cause other than the fire[.] * * * [The appraisers] are required to assess only such loss which, in their determination, is the result of damages caused by [that] fire." The trial justice ultimately held that "the issues of the amount of loss and the extent of physical damages are so inextricably intertwined that attempting to separate them in the event [of a] genuine, not postulated, dispute[ ] would frustrate the purpose of the appraisal statute." Accordingly, he ordered defendant to select an appraiser within twenty days of the order.[1]

Allstate appealed to this Court asking that the Superior Court judgment be vacated. In support of this request, defendant asserts that (1) the trial justice failed to make findings sufficient to support a final judgment as required by Rule 54(b); (2) the permanent injunction issued actually was preliminary and mandatory in nature, and was not supported by a finding of great urgency so as to justify such extraordinary relief; and (3) the trial justice's determination that the parties were bound to submit disputes to appraisal was inconsistent with the facts of the case and the applicable law.

## Analysis

### I

### Issuance of a Permanent Injunction

In reviewing a trial justice's decision to grant or deny a permanent injunction, this Court will reverse only "when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong." *Hilley v. Lawrence,* 972 A.2d 643, 648 (R.I.2009) (quoting *Holden v. Salvadore,* 964 A.2d 508, 512–13 (R.I.2009)). Before this Court, defendant argues that the injunction should be vacated because the trial justice failed to find that there was "no just reason for delay," which Rule 54(b) requires when a final judgment is issued for only one claim in a multi-claim action.[2] We accord great

[15 A.3d 1029]

deference to factual findings of a trial justice sitting without a jury, and accord the same deference to mixed questions of law and fact. *Hilley,* 972 A.2d at 648. However, we review *de novo* a trial justice's rulings on questions of law. *Holden,* 964 A.2d at 513.

We are hard-pressed to comprehend Allstate's argument. Although Allstate is correct in its assertion that the trial justice did not specifically state that he found "no just reason for delay," the record discloses that plaintiff's house was partially destroyed by a fire and in immediate need of repair. Clearly, in the face of a dispute over the amount of damages, the appraisal process is but the first step in restoring plaintiff's dwelling. Moreover, Allstate appears to suggest that the breach-of-contract and bad-faith claims simultaneously should have been decided at the time that the declaratory and injunctive relief action was heard, a position it did not argue in the Superior Court. Allstate's efforts to prolong this litigation has unfairly burdened its insured. The trial justice noted that, despite repeated requests, Allstate refused to proceed to appraisal, and there was no reason to believe that defendant would comply with the policy provision absent an order to do so. We agree with this finding and reject Allstate's Rule 54(b) contentions.

Allstate further contends that, despite the trial justice's characterization that the injunctive relief was a permanent injunction, the injunction was actually preliminary and mandatory in nature because a final judgment was not issued. Consequently, defendant argues that the injunction must be vacated because it was not supported by a finding of great urgency required for such relief. This argument is unpersuasive and not supported by the record. The permanent

injunction was issued after a hearing on the merits. In his bench decision, the trial justice conducted a thorough analysis of the governing case law, and he concluded that the parties were required to submit to the appraisal process, and the parties apparently did so. Thus, the Rule 54(b) judgment that subsequently issued for one of the three counts in the complaint was warranted.

## II
## Appraisal Process

We now turn to the ultimate issue in this case: whether Allstate was required to submit to the appraisal process. Although its argument is less than precise, Allstate appears to contend that there was some damage to plaintiff's home that was unrelated to the fire, and that Allstate feared the appraisal might include the repair costs for those uncovered damages, thereby forcing Allstate to pay for repairs not within the policy. Allstate thus contends that this dispute concerns the scope of coverage, which therefore must be resolved in the courts, rather than merely

[15 A.3d 1030]

the amount of the loss, a question that is properly subject to the appraisal process.

We pause to note that at oral argument, for the first time in this litigation, Allstate declared that the alleged preexisting damage to plaintiff's dwelling was water damage to the roof and the basement, which may or may not have been caused by efforts to extinguish the fire. This contention was not raised in the proceedings below nor in any of defendant's filings in this Court. In fact, in his bench decision, the trial justice characterized defendant's position on the question of other non-fire related damage as "coy," declaring that, "nowhere in its pleading, nor in any argument made to the [c]ourt in response to the plaintiff's application, [did] the defendant point to any reason to believe that any such nonfire-caused damage exists to any part, portion, or element of the insured premises."

Allstate has never disputed that plaintiff's "Deluxe Homeowner's Policy" covers direct loss caused by fire damage. Nor has defendant denied that plaintiff's home sustained fire damage. Were Allstate denying the claim in its entirety as a non-covered loss, then a genuine dispute over the scope of insurance coverage would arise, and litigation would be the appropriate avenue to resolve the claim. However, because this dispute involves the extent of damages and the amount of loss, it simply cannot be characterized as a scope-of-coverage issue. As the trial justice found, the issue of causation and amount of loss are "so inextricably intertwined that attempting to separate them in the event even of genuine, not postulated, disputes would frustrate the purpose of the appraisal statute."

Moreover, the entire thrust of § 27–5–3—the provision governing the format of fire insurance policies—and in particular, its requirement that these policies contain an appraisal clause, is to ensure speedy and efficient resolution of claims. Allstate's attempt to circumvent the appraisal process in favor of litigation not only delays resolution of these claims but can have the effect of forcing its policyholders to make difficult choices. Faced with the prospect of costly and time-consuming litigation, policyholders might choose to accept a low settlement offer rather than undertake litigation. Such a result is unacceptable.

In *State Farm Fire and Casualty Co. v. Licea*, 685 So.2d 1285 (Fla.1996), the Florida Supreme Court considered the distinction between a scope of coverage issue and one concerning the amount of loss. The court declared, "where there is a demand for an appraisal under [a] policy, the only 'defenses' which remain for the insurer to assert are that there is no coverage under the policy for the loss as a whole or that there has been a violation of the usual policy conditions such as fraud, lack of notice, and failure to cooperate." *Id.* at 1288. We deem this reasoning persuasive and applicable to the present case. Accordingly, we hold that unless the insurer denies coverage for the claimed loss and if the dispute is limited to the amount or

extent of the loss, the parties are required to submit to the appraisal process.[3]

[15 A.3d 1031]

Furthermore, in the event of a genuine scope-of-coverage issue—whether caused by an ambiguity in the policy or other circumstances not present here—the issue may be litigated. However, we hold that in cases in which the insurer refuses to submit to the appraisal process in favor of litigation, the insurer must *specify with particularity* to the policyholder the alleged ambiguity in the policy and articulate why the issue is one of coverage for the loss rather than the amount of the loss. An insured is entitled to timely and adequate notice of the specifics of the dispute so that the insured may contest the denial of coverage. In the case at bar, we are of the opinion that Allstate's vague allegations of "pre-existing damage" were insufficient to put the policyholder on notice, and, as noted above, were not a genuine attempt to litigate a scope-of-coverage issue.

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment and remand the papers to the Superior Court.

--------

Notes:

[1] According to plaintiff, the appraisal panel subsequently determined the cost of repair or replacement to the dwelling to be $190,293.43, with an actual cash value in the amount of $153,776.38. Hahn further asserts, that although the actual cash value has been paid, Allstate remains liable for the difference between the repair and/or replacement cost and the actual cost, once that figure is determined. We note that there is no evidence in the record about the appraisal or the final determination of the amount of loss.

[2] Rule 54(b) of the Superior Court Rules of Civil Procedure provides as follows:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

[3] The plaintiff cited to another Florida Supreme Court case, *Johnson v. Nationwide Mutual Insurance Co.*, 828 So.2d 1021 (Fla.2002), both in her brief and during argument. She argued the case was analogous to her present dispute and urged us to adopt Florida's reasoning. Although the analysis in *Johnson* bears some similarity to the case at bar, the dispute arose when the insurance company denied all coverage under the policy. As noted above, this is an acceptable defense to appraisal and merits litigation. Therefore, *Johnson* does not apply to the present case.

fast

# Exhibit 2

JUSTIA

# Francis X. Flaherty

Rhode Island Supreme Court

## Biography

Francis X. Flaherty was appointed to the Rhode Island Supreme Court by Governor Donald L. Carcieri and was sworn in during May of 2003.

Justice Flaherty was born in Providence, Rhode Island and was educated in public and parochial schools in Providence and Warwick. He graduated from Providence College in 1968 and then served with the United States Army infantry. After his discharge from the Army, Justice Flaherty enrolled at Suffolk University Law School, graduating cum laude in 1975.

Immediately upon graduation and admission to the Rhode Island and federal bars, Justice Flaherty began a private law practice in Warwick, Rhode Island. He also served in local government as an assistant city solicitor and was elected to the Warwick City Council in 1978, serving until 1985. In 1984, Justice Flaherty was elected the Mayor of the City of Warwick and served three terms until

January 1991. He was candidate for Governor of the State of Rhode Island in 1990 and 1992.

After leaving public office, Justice Flaherty returned to the private practice of law in Providence and in Warwick. He was engaged in the general practice of law with a concentration in civil litigation, legal malpractice defense, public utilities law, and labor law.

Justice Flaherty has been a member of the Rhode Island and the American Bar Associations, the Rhode Island State Supreme Court Ethics Advisory Panel, and has served as an arbitrator on both the American Arbitration Association Commercial and Labor Panels and for the Rhode Island Superior Court. He was president of the Rhode Island League of Cities and Towns in 1989 and 1990 and chairman of the Rhode Island Interlocal Risk Management Trust in 1987 and 1988.

Justice Flaherty has been a member of the Board of Directors of the Rhode Island Special Olympics, Bishop Hendricken High School, McAuley House, Kent County Memorial Hospital, the Rhode Island Academic Decathlon, and New England Institute of Technology.

**View More ›**

## Jurisdictions Admitted to Practice

**Rhode Island**

## Professional Experience

**Justice**
Rhode Island Supreme Court
2003 - Current

**Attorney**
Private Practice
1991 - 2003

**Mayor**
City of Warwick
1985 - 1991

**Member**
Warwick City Council
1978 - 1985

**Attorney**
Private Practice
1975 - 1984

United States Army
1968 - 1972

# Education

**Suffolk University Law School**
J.D. (1975)
Honors: cum laude

**Providence College**
B.A. (1968)

# Professional Associations

**Rhode Island State Bar**
Member
Current

**Rhode Island Board of Governors for Higher Education**
Member
1988 - 2003

**Rhode Island League of Cities and Towns**
President
1989 - 1990

**Rhode Island Interlocal Risk Management Trust**
Chairman

1987 - 1988

## Websites & Blogs

### Website

Rhode Island Supreme Court

### Website

Court biography

## Contact & Map




250 Benefit St
Providence, RI 02903
**Telephone:** (401) 222-3274

Download vCard

See this notice in Cambodian, Spanish, and Portuguese on the attached pages. **Español**: Véase esta notificación en camboyano, español y portugués en las páginas adjuntas. **Português**: Leia esta notificação em cambojano, espanhol e português nas páginas em anexo.

# NOTICE

## You have a case in the Rhode Island state court system.

## You have the right to an interpreter at no cost to you.

Rhode Island Supreme Court Executive Order 2012-05 states that when a Limited-English Proficient (LEP) person appears in court, the Rhode Island Judiciary will provide a free authorized interpreter for the defendant, plaintiff, witness, victim, parent of a juvenile, or someone with a significant interest in the court proceeding. This interpreting service is provided at no cost to the parties and in all types of cases, both civil and criminal. Court interpreters work in all the courthouses of the Rhode Island state court system.

**To schedule an interpreter for your day in court, you have the following options:**

1. **Call the Office of Court Interpreters at (401) 222-8710, or**
2. **Send an email message to interpreterfeedback@courts.ri.gov, or**
3. **Visit the interpreters' office to schedule an interpreter:**

**The Office of Court Interpreters**
**Licht Judicial Complex**
**Fourth Floor, Room 401**
**250 Benefit Street**
**Providence, RI 02903**

**When requesting an interpreter, please provide the following information:**

**The name and number of your case**
**The language you are requesting**
**The date and time of your hearing**
**The location of your hearing**
**Your name and a telephone number where we can reach you or your lawyer**

---

For more information in Portuguese, Russian, and Spanish, including a listing of court forms that are available in Spanish, please visit our website on the Internet:

https://www.courts.ri.gov/Interpreters/englishversion/Pages/default.aspx.

To request a translation of this notice into any other language, please call the Office of Court Interpreters at (401) 222-8710. It would be helpful to have an English speaker with you when you call.

The Rhode Island Judiciary is committed to making the courts accessible to all.

The Office of Court Interpreters
Licht Judicial Complex Fourth
Floor Room 401
250 Benefit Street
Providence, RI 02903

មើលសេចក្តីជូនដំណឹងនេះជាភាសាខ្មែរ អេស្ប៉ាញ និងព័រទុយហ្គាល់នៅលើទំព័រដែលបានភ្ជាប់។

# សេចក្តីជូនដំណឹង

## លោកអ្នកមានបណ្តឹងនៅក្នុងប្រព័ន្ធតុលាការនៃរដ្ឋ Rhode Island។

## លោកអ្នកមានសិទ្ធិស្នើសុំអ្នកបកប្រែដោយឥតគិតថ្លៃសម្រាប់ខ្លួនឯង។

ដីកាប្រតិបត្តិរបស់តុលាការកំពូលនៃ Rhode Island (Rhode Island Supreme Court Executive Order) លេខ 2012-05 បានចែងថានៅពេលបុគ្គលដែលមានចំណេះដឹងផ្នែកភាសាអង់គ្លេសមានកំណត់ (LEP) បង្ហាញខ្លួននៅក្នុងតុលាការ តុលាការនៃ Rhode Island នឹងផ្តល់អ្នកបកប្រែដែលបានអនុញ្ញាតដោយឥតគិតថ្លៃសម្រាប់ចុងចោទ ដើមចោទ សាក្សី ជនរងគ្រោះ មាតាបិតារបស់អនីតិជន ឬនរណាម្នាក់ដែលពាក់ព័ន្ធយ៉ាងសំខាន់នៅក្នុងដំណើរការតុលាការ។ សេវាកម្មបកប្រែនេះ ត្រូវបានផ្តល់ជូនដោយឥតគិតថ្លៃសម្រាប់គូភាគី និងនៅគ្រប់ប្រភេទនៃបណ្តឹង ទាំងរដ្ឋប្បវេណី និងព្រហ្មទណ្ឌ។ អ្នកបកប្រែក្នុងតុលាការធ្វើការនៅក្នុងគ្រប់តុលាការទាំងអស់របស់ប្រព័ន្ធតុលាការនៃរដ្ឋ Rhode Island។

**ដើម្បីគ្រោងពេលវេលាអ្នកបកប្រែសម្រាប់ថ្ងៃចូលសវនាការរបស់លោកអ្នក លោកអ្នកមានជម្រើសដូចខាងក្រោម ៖**

1. **ទូរស័ព្ទមកកាន់ការិយាល័យអ្នកបកប្រែប្រចាំតុលាការតាមរយៈលេខ (401) 222-8710 ឬ**
2. **ផ្ញើអ៊ីម៉ែលទៅកាន់ interpreterfeedback@courts.ri.gov ឬ**
3. **ទៅកាន់ការិយាល័យអ្នកបកប្រែដើម្បីគ្រោងពេលវេលាអ្នកបកប្រែ ៖**

**The Office of Court Interpreters**
**Licht Judicial Complex**
**Fourth Floor, Room 401**
**250 Benefit Street**
**Providence, RI 02903**

**នៅពេលស្នើសុំអ្នកបកប្រែ សូមផ្តល់នូវព័ត៌មានដូចខាងក្រោម ៖**

- **ឈ្មោះ និងលេខបណ្តឹងរបស់លោកអ្នក**
- **ភាសាដែលលោកអ្នកស្នើសុំ**
- **កាលបរិច្ឆេទ និងម៉ោងសវនាការរបស់លោកអ្នក**
- **ទីតាំងនៃសវនាការរបស់លោកអ្នក**
- **ឈ្មោះ និងលេខទូរស័ព្ទលោកអ្នកដែលយើងខ្ញុំអាចទំនាក់ទំនងលោកអ្នក ឬមេធាវីលោកអ្នកបាន**

---

សម្រាប់ព័ត៌មានបន្ថែមជាភាសាព័រទុយហ្គាល់ រុស្ស៊ី និងអេស្ប៉ាញ រួមទាំងបញ្ជីទម្រង់បែបបទតុលាការដែលមានជាភាសាអេស្ប៉ាញនោះ សូមចូលទៅកាន់គេហទំព័រយើងខ្ញុំនៅលើអ៊ិនធឺណិត ៖

https://www.courts.ri.gov/Interpreters/englishversion/Pages/default.aspx.

ដើម្បីស្នើសុំការបកប្រែសេចក្តីជូនដំណឹងនេះជាភាសាណាមួយផ្សេងទៀត សូមទូរស័ព្ទមកការិយាល័យអ្នកបកប្រែប្រចាំតុលាការតាមរយៈលេខ (401) 222-8710។ វាជាការចាំបាច់ដែលត្រូវមានអ្នកនិយាយភាសាអង់គ្លេសជាមួយលោកអ្នកនៅពេលដែលលោកអ្នកទូរស័ព្ទចូល។

តុលាការ Rhode Island ប្តេជ្ញាធ្វើឲ្យតុលាការអាចប្រើប្រាស់បានសម្រាប់មនុស្សគ្រប់គ្នា។

ការិយាល័យអ្នកបកប្រែប្រចាំតុលាការ
Licht Judicial Complex
Fourth Floor Room 401
250 Benefit Street
Providence, RI 02903

See this notice in Cambodian, Spanish, and Portuguese on the attached pages.
**Camboyano**: SAMPLE: [Véase esta notificación en camboyano, español y portugués en las páginas adjuntas.]
**Español**: Véase esta notificación en camboyano, español y portugués en las páginas adjuntas.
**Português**: Leia esta notificação em cambojano, espanhol e português nas páginas em anexo.

# NOTIFICAÇÃO

## V. Ex.ª tem um processo em curso no sistema judiciário do Estado de Rhode Island,

## V. Ex.ª tem direito aos serviços gratuitos de um intérprete.

A Ordem Executiva 2012-05 do Supremo Tribunal de Rhode Island prevê que quando uma pessoa com conhecimentos limitados da língua inglesa (*Limited-English Proficient*) (LEP) comparece em tribunal, a Administração Judiciária de Rhode Island disponibiliza-lhe gratuitamente os serviços de um intérprete autorizado a um réu, autor, testemunha, vítima, pai ou mãe de um menor ou alguém com interesse significativo no processo judicial. O serviço de intérprete é prestado gratuitamente às partes e em todos os tipos de processos, sejam eles civis ou penais. Os intérpretes do tribunal trabalham em todos os tribunais do sistema judiciário do Estado de Rhode Island.

**Para agendar os serviços de um intérprete para o seu dia no tribunal, tem as seguintes opções:**

1. **Telefonar para o Gabinete de Intérpretes Judiciais através do n.º (401) 222-8710, ou**
2. **Enviar uma mensagem de correio eletrónico para interpreterfeedback@courts.ri.gov, ou**
3. **Deslocar-se ao gabinete de intérpretes para agendar os serviços de um intérprete:**

**Gabinete de Intérpretes Judiciais**
**Complexo Judicial Licht**
**Quarto Piso, Sala 401**
**250 Benefit Street**
**Providence, RI 02903**

**Quando solicitar os serviços de um intérprete deve fornecer os seguintes dados:**

- **O nome e número do seu processo**
- **O idioma que solicita**
- **A data e hora da sua audiência**
- **O local da sua audiência**
- **O seu nome e um número de telefone para o podermos contactar a si ou ao seu advogado**

---

Para obter mais informações em português, russo e espanhol, incluindo uma lista dos formulários judiciais disponíveis em espanhol, visite o nosso website na internet:

https://www.courts.ri.gov/Interpreters/englishversion/Pages/default.aspx.

Para solicitar uma tradução desta notificação para qualquer outro idioma, telefone para o Gabinete de Intérpretes Judiciais através do número (401) 222-8710. Recomenda-se que esteja acompanhado por alguém que fale inglês quando fizer a chamada.

A Administração Judiciária de Rhode Island está empenhada em tornar os tribunais acessíveis para todos.

Gabinete de Intérpretes Judiciais
Complexo Judicial Licht
Quarto Piso, Sala 401
250 Benefit Street
Providence, RI 02903

See this notice in Cambodian, Spanish, and Portuguese on the attached pages.
**Español**: Véase esta notificación en camboyano, español y portugués en las páginas adjuntas.
**Português**: Leia esta notificação em cambojano, espanhol e português nas páginas em anexo.

# AVISO

## Usted tiene un caso en el sistema judicial de Rhode Island.

## Usted tiene el derecho a tener un intérprete sin costo para usted.

La Orden Ejecutiva 2012-05 del Tribunal Supremo de Rhode Island dicta que cuando una persona que tiene un dominio limitado del inglés (LEP) comparece ante la corte, el Sistema Judicial de Rhode Island le proveerá un intérprete autorizado gratis sea el acusado/demandado, demandante, testigo, víctima, padre de un menor de edad alguien que tenga con un interés importante en el proceso de la corte. Este servicio de interpretación se le proveerá sin costo alguno a los participantes en toda clase de caso, sea civil o penal.
Los intérpretes judiciales trabajan en todos los tribunales del Sistema Judicial de Rhode Island.

**Para solicitar un intérprete para su comparecencia en el tribunal, usted tiene las siguientes opciones:**

1. **Llamar a la Oficina de Intérpretes en el tribunal al 401-222-8710 ;**
2. **Mandar un correo electrónico a interpreterfeedback@courts.ri.gov; o**
3. **Presentarse a la Oficina de Intérpretes para solicitar un intérprete:**

**The Office of Court Interpreters**
**Licht Judicial Complex**
**Cuarto Piso, Oficina 401 A-B**
**250 Benefit Street**
**Providence, RI 02903**

**Al solicitar un intérprete, por favor provea la siguiente información:**

- **El nombre y el número de su caso**
- **El idioma que solicita**
- **La fecha y hora de su audiencia**
- **Dónde va a tomar lugar su audiencia**
- **Su nombre y número de teléfono por el cual nos podamos poner en contacto con usted o con su abogado.**

---

Para obtener más información en portugués, ruso o español, incluyendo una lista de formularios de la corte que están disponibles en español, visite nuestra página de internet:

https://www.courts.ri.gov/Interpreters/englishversion/Pages/default.aspx

Para solicitar la traducción de este aviso en cualquier otro idioma, por favor llame a la oficina de intérpretes al (401) 222-8710. Ayudaría si usted puede estar en compañía de una persona que habla inglés cuando llame.

El sistema jurídico de Rhode Island se compromete a proporcionar a todas las personas mejor acceso a los tribunales.

The Office of Court Interpreters
Licht Judicial Complex
Fourth Floor Room 401
250 Benefit Street
Providence, RI 02903

9/15

KYLE R NORIGIAN

DATE 5/30/24 000101

PAY TO THE ORDER OF RI [illegible] Commission $ 25—

Twenty five dollars 00/100 DOLLARS

BANKRI
BANKRHODEISLAND.COM

⑆011501682⑆ 101039568⑈ 0101